## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PENSON WORLDWIDE, *et al.*, | ) | Case No. 13-10061 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| PENSON TECHNOLOGIES LLC, | ) | |
| (successor in interest to SAI | ) | |
| HOLDINGS, INC. and PENSON | ) | |
| FINANCIAL SERVICES, INC.), | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 16-51522 (LSS) |
| | ) | |
| v. | ) | |
| | ) | |
| SCHONFELD GROUP HOLDINGS | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### OPINION[1]

Plaintiff Penson Technologies LLC, as the successor in interest to Debtor SAI

Holdings, Inc. ("SAI") and Debtor Penson Financial Services, Inc. ("Penson"), initiated this

post-confirmation adversary proceeding objecting to Defendant Schonfeld Group Holdings

LLC's proof of claim and seeking to recover damages for breaches of contracts.  Defendant

poses multiple challenges to Plaintiff's choice of forum and asks me either to dismiss the

matter, enforce a forum selection clause, abstain or otherwise transfer the case to a court in

---

[1] Fed. R. Bankr. P. 7052(a)(3) does not require "findings or conclusions" when ruling on a motion
under Rule 12.

New York. Because I hold that this matter is, at its heart, an objection to a proof of claim, it is properly in this court and should remain here. Accordingly, I will deny the requested relief.

## I.    BACKGROUND

*The Prepetition Transaction*

Defendant is a trading and investment company. In 2006, it managed its wholly owned subsidiary, Schonfeld Securities, LLC, which operated a clearing and back office business. Defendant also had affiliate entities who were "introducing firms" or "correspondents" ("Correspondents")—brokers that traded securities for their own accounts or those of their clients and who contracted with clearing firms to perform services necessary to conduct trades. Opus Trading Fund LLC ("Opus") was one Correspondent.

In November 2006, SAI purchased Schonfeld Securities, LLC's clearing and back office operations. The transaction was memorialized in an Asset Purchase Agreement ("APA") dated as of November 20, 2006 and executed by SAI as buyer and Schonfeld Securities, LLC as seller.[2] The APA also contemplated that Penson, SAI's wholly owned subsidiary, would provide clearing and financial services for seven Correspondents, including Opus, for a period of ten years.

The APA required Defendant to "absolutely, unconditionally and irrevocably guarantee the immediate payment of, and the full, complete and timely performance of" each of Schonfeld Securities, LLC's obligations under the APA pursuant to a separate guaranty agreement to be executed contemporaneously with the APA.[3] On

---

[2] Appendix to Motion to Dismiss A149–A209.
[3] APA Section 6.02, Appendix to Motion to Dismiss A187.

November 20, 2006, therefore, Defendant executed that certain Unconditional Guaranty Agreement ("Guaranty") in favor of SAI and Penson. Defendant also agreed to back the Correspondents' respective obligations to exclusively use Penson for their clearing and financial services needs.[4] To memorialize these arrangements, each of the seven Correspondents entered into a clearing agreement. As relevant here, Opus and Penson also entered into a series of portfolio margining side agreements (the agreement at issue, "PMA Side Agreement").[5]

The purchase price to be paid by SAI to Schonfeld Securities, LLC or Defendant (at the direction of Schonfeld Securities, LLC) was projected to be $100 million. Payment consisted of an initial amount at closing[6] and four subsequent earn out payments based on the net revenues generated from the Correspondents' trading activity over the next four years.

Plaintiff alleges that in late January 2012, shortly before the last earn out payment was due, Defendant caused Opus to terminate its PMA Side Agreement with Penson, and Opus moved its entire clearing, execution, margin and custody relationship to JPMorgan in violation of the exclusivity provisions in that agreement. Plaintiff alleges these actions damaged Plaintiff in an amount in excess of $20 million.

***The Bankruptcy Case***

On January 11, 2013, SAI, Penson and eight other related entities ("Debtors") filed voluntary bankruptcy petitions in this court. On July 31, 2013, the court confirmed the

---

[4] Appendix to Motion to Dismiss A211–A215.
[5] Appendix to Motion to Dismiss A217–A228.
[6] The APA contemplated payment of the purchase price in common stock of Penson Worldwide, Inc. APA Section 3.01, Appendix to Motion to Dismiss A166.

Debtors' Fifth Amended Joint Liquidation Plan.  With exceptions not relevant here, on the effective date, Debtors transferred their assets, claims, and causes of action to Plaintiff.

Defendant timely filed proofs of claim against SAI and Penson Worldwide, Inc. Defendant asserts that it is owed $3,783,932 for "unpaid purchase price for the completed sale of a clearing business"[7] (i.e., the last earn out payment under the APA).

On November 16, 2016, Plaintiff commenced this adversary proceeding by filing its Complaint and Objection to Claim ("Complaint").[8]  In the Complaint, Plaintiff recites much of the history just recounted and asserts five causes of action as a result of Opus's early termination of the PMA Side Agreement:

> **Count I**      **Breach of Contract**
> Defendant breached the APA by causing Opus to terminate the PMA Side Agreement.

> **Count II**     **Breach of Guaranty**
> Defendant failed to discharge its obligation under the Guaranty to ensure Opus's performance of the PMA Side Agreement.

> **Count III**    **Breach of Obligation of Good Faith and Fair Dealing**
> Defendant breached the implied obligation of good faith and fair dealing under the APA by causing Opus to breach the PMA Side Agreement.

> **Count IV**     **Objection to Claim[9]**
> Defendant materially breached the APA by causing Opus to breach the PMA Side Agreement such that SAI's obligation to make the last earn out payment has been excused. Alternatively, Plaintiff asserts that the Defendant's proof of claim should be deemed satisfied in full on account of damages suffered by SAI.

---

[7] Schonfeld's Proof of Claim, Appendix to Motion to Dismiss A1–A15.
[8] Complaint and Objection to Claim, Nov. 16, 2016, D.I. 1.
[9] An objection to a proof of claim is properly raised in an adversary proceeding.  Fed. R. Bankr. P. 3007(b).

> ➤ **Count V**    **Declaratory Judgment Regarding Plaintiff's Right to Setoff**
> Declaration that Plaintiff is entitled to offset damages incurred
> by SAI as a result of Defendant's material breaches of the APA
> against any amounts it owes to Defendant.

Defendant now asks me to dismiss the Complaint for lack of subject matter jurisdiction.[10]

Even if subject matter jurisdiction exists, Defendant alternatively requests that I abstain,

dismiss the complaint under the doctrine of *forum non conveniens* or transfer the case to New

York based on a forum selection clause.

## II.    Subject Matter Jurisdiction Exists Over Each Claim in this Adversary Proceeding

In its Reply Brief, Defendant summarizes its subject matter jurisdiction argument:

[Defendant's] actual argument, as set forth in its initial moving brief, is that
although [Plaintiff's] claims are statutorily core pursuant to 28 U.S.C. § 157,
[Plaintiff's] claims are not constitutionally core as required by *Stern v. Marshall*
and *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999). Accordingly, absent an
independent basis for federal jurisdiction (which does not exist in this case),
this Court lacks subject matter jurisdiction over [Plaintiff's] counterclaims.[11]

---

[10] Schonfeld Group Holdings LLC's Motion: (I) To Dismiss the Complaint for Lack of Subject
Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1); or, Alternatively, (II) To Abstain Pursuant
to 28 U.S.C. § 1334(c)(1); or (III) to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)
and/or the Doctrine of Forum Non Conveniens Based on the Parties' Forum Selection Clause; or
(IV) To Transfer This Action Pursuant to the Doctrine of Forum Non Conveniens or 28 U.S.C. §
1412, Jan. 17, 2017, D.I. 9 ("Motion to Dismiss"); Memorandum of Law in Support of Defendant
Schonfeld Group Holdings LLC's Motion: (I) To Dismiss the Complaint for Lack of Subject Matter
Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1); or, Alternatively, (II) To Abstain Pursuant to 28
U.S.C. § 1334(c)(1); or (III) to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and/or
the Doctrine of Forum Non Conveniens Based on the Parties' Forum Selection Clause; or (IV) To
Transfer This Action Pursuant to the Doctrine of Forum Non Conveniens or 28 U.S.C. § 1412, Jan.
17, 2017, D.I. 10 ("Memorandum of Law in Support of Motion to Dismiss"); Appendix to
Memorandum of Law in Support of Defendant Schonfeld Group Holdings LLC's Motion: (I) To
Dismiss the Complaint for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1);
or, Alternatively, (II) To Abstain Pursuant to 28 U.S.C. § 1334(c)(1); or (III) to Dismiss the
Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and/or the Doctrine of Forum Non Conveniens
Based on the Parties' Forum Selection Clause; or (IV) To Transfer This Action Pursuant to the
Doctrine of Forum Non Conveniens or 28 U.S.C. § 1412, Jan. 17, 2017, D.I. 11 ("Appendix to
Motion to Dismiss").

[11] Reply Memorandum of Law in Further Support of Defendant Schonfeld Group Holdings LLC's
Motion: (I) to Dismiss the Complaint for Lack of Subject Matter Jurisdiction Pursuant to Fed. R.
Civ. P. 12(b)(1); or, Alternatively, (II) to Abstain Pursuant to 28 U.S.C. § 1334(c)(1); or (III) to
Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and/or the Doctrine of *Forum Non*

Defendant confuses and conflates subject matter jurisdiction with a bankruptcy court's ability to enter a final order resolving a proceeding. In responding to Defendant's argument, Plaintiff follows suit, focusing on whether I have authority consistent with the Constitution to enter a final order on the causes of action asserted in the Complaint.[12] In focusing on this issue, both parties miss the fundamental question posed by a subject matter jurisdiction challenge: whether bankruptcy jurisdiction exists over the adversary proceeding.[13]

### *Bankruptcy Jurisdiction*

Bankruptcy courts are courts of limited jurisdiction, and their subject matter jurisdiction derives from federal statutes[14]—specifically from 28 U.S.C. §§ 1334 and 157.[15] Congress granted federal district courts original and exclusive jurisdiction over all cases arising under title 11, and original but not exclusive jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11."[16] District courts thus have bankruptcy jurisdiction over two types of proceedings: (i) the main bankruptcy case

---

*Conveniens* Based on the Parties' Forum Selection Clause; or (IV) to Transfer this Action Pursuant to the Doctrine of *Forum Non Conveniens* or 28 U.S.C. § 1412 at 4, Mar. 3, 2017, D.I. 20 ("Reply"); *see also* Memorandum of Law in Support of Motion to Dismiss 23 ("Thus, just like Vickie's counterclaim in *Stern*, because Penson's state-law based counterclaim will not be fully resolved in the process of ruling on Schonfeld's proof of claim, the counterclaim cannot be a 'core' claim regardless of Section 157(b)(2)(C).").

[12] Penson's Response (A) in Opposition to Schonfeld Motion to Dismiss Penson's Claim Objection and Related Complaint, or to Abstain or Transfer Venue; and (B) in Support of Penson's Claim Objection and Related Complaint at 5–8, Feb. 16, 2017, D.I. 19 ("Penson's Response").

[13] Determining whether bankruptcy jurisdiction exists over the adversary proceeding differs from determining whether I can finally adjudicate the matter or must enter proposed findings of fact and conclusions of law. *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 163 (3d Cir. 2004) (recognizing that the court need not determine whether a proceeding is "core" for subject matter jurisdiction purposes, because that "represents a question wholly separate from that of subject matter jurisdiction.").

[14] *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59–87 (1982) (quoting U.S. Const. art. III, § 1).

[15] *Resorts*, 372 F.3d at 161 (quoting *United States Brass Corp. v. Travelers Ins. Grp., Inc.* (*In re United States Brass Corp.*), 301 F.3d 296, 303 (5th Cir. 2002)).

[16] 28 U.S.C. § 1334(a), (b).

itself, and (ii) civil proceedings that arise under title 11, or that arise in or are related to the main bankruptcy case. Bankruptcy jurisdiction does not exist if the proceeding does not fit into one of these two categories. Because Congress granted bankruptcy jurisdiction directly to the district court,[17] bankruptcy judges exercise bankruptcy jurisdiction only when the district court refers the case or proceeding to the bankruptcy judge.[18] In the District of Delaware there is a standing order referring all bankruptcy cases and their attendant civil proceedings to bankruptcy judges,[19] which is how the Penson Worldwide bankruptcy cases and this adversary proceeding came before me.

Distinctions between "arising under," "arising in" (both core) and "related to" (non-core) proceedings are not relevant to a determination of subject matter jurisdiction when the proceeding has been filed before plan confirmation.[20] Post-confirmation, however, bankruptcy jurisdiction over non-core proceedings narrows; it exists only if there is "a close nexus to the bankruptcy plan or proceeding."[21] In contrast, in core proceedings the close nexus test does not apply; bankruptcy jurisdiction remains the same as it was pre-confirmation.[22]

---

[17] Though I have not seen it expressed this way, bankruptcy jurisdiction seems akin to federal question jurisdiction, diversity jurisdiction or admiralty jurisdiction—it is a type of jurisdiction conferred on the district court.

[18] 28 U.S.C. § 157(a).

[19] United States District Court for the District of Delaware Amended Standing Order of Reference, In re Standing Order of Reference Re: Title 11, February 29, 2012.

[20] *Residential Funding Co. v. UBS Real Estate Secs., Inc.* (*In re Residential Capital, LLC*), 515 B.R. 52, 62 (Bankr. S.D.N.Y. 2014) (citing 28 U.S.C. § 1334(b)) ("[T]he core/non-core distinction generally does not bear on the question of federal subject matter jurisdiction—federal courts have jurisdiction to hear *both* core *and* non-core matters.").

[21] *Resorts*, 372 F.3d at 167 ("At the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding.").

[22] *Geruschat v. Ernst Young LLP* (*In re Seven Fields Dev. Corp.*), 505 F.3d 237, 265 (3d Cir. 2007); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 621–22 (Bankr. D. Del. 2016).

As this adversary proceeding was filed post-confirmation, the path of least resistance
to bankruptcy jurisdiction is a determination that a proceeding is core.[23]  Here, the analysis
is straightforward.  Each count in the Complaint is an enumerated core proceeding.  Counts
IV and V (objection to claim and declaration on setoff) fall under § 157(b)(2)(B), allowance
or disallowance of claims against the estate.  Counts I-III fall under § 157(b)(2)(C),
counterclaims by the estate against persons filing claims against the estate.  Each claim thus
"arises in" the bankruptcy case or under title 11[24] and the subject matter jurisdiction analysis
is complete.  Bankruptcy jurisdiction exists over each and every claim in the Complaint.

Defendant looks to the *Halper* two-part test[25] to argue that I lack subject matter
jurisdiction.  Under *Halper*, to determine whether a matter is core, courts first consider
whether the proceeding is an enumerated proceeding in § 157(b).  Second, courts consider
whether the proceeding invokes a substantive right provided by title 11 or whether it is a
proceeding that, by its nature, could arise only in the context of a bankruptcy case.[26]  The
*Halper* test "ensure[s] that § 157(b) 'core' proceeding jurisdiction is exercised in a manner
consistent with [the Supreme Court's decision in] *Marathon*."[27]

---

[23] *Seven Fields*, 505 F.3d at 257 n.18.  Pre-confirmation, related to jurisdiction provides the "broadest
of the potential paths" to subject matter jurisdiction, so it is not unusual for courts to first evaluate
whether jurisdiction exists as a "related to" proceeding.  *Id.*; *Resorts*, 372 F.3d at 163–64; *In re Marcus
Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991) (citations omitted) ("It is not necessary,
though, to fit the proceeding into one of these particular categories [arising in, arising under or
related to], since 'they operate conjunctively to define the scope of jurisdiction.'  Hence, we need
only determine 'whether a matter is at least 'related to' the bankruptcy.'").

[24] *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011) ("Under our reading of the statute, core proceedings
are those that arise in a bankruptcy case or under Title 11.  The detailed list of core proceedings in
§ 157(b)(2) provides courts with ready examples of such matters."); *Residential Capital*, 515 B.R. at 65
("[T]he counterclaims asserted in this action are statutorily core as counterclaims under section
157(b)(2)(C), and the Court has 'arising in' subject matter jurisdiction over the claims.").

[25] *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999).

[26] *Id.* at 836 (citations and quotations omitted).

[27] *Id.* (citations omitted) (referring to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S.
50 (1982)).

Defendant's reliance on *Halper* to determine subject matter jurisdiction in this instance is misplaced. As is evidenced by the quoted language above, *Halper* is concerned with whether a matter is core consistent with the constitutional exercise of entering judgments. We know this because *Halper* explicitly relies on *Marathon* as the basis for the test[28] and from the Court's statement of the issue reviewed on appeal—whether "the Bankruptcy Court had core proceeding jurisdiction under 11 U.S.C. § 157(b) *giving it the power to issue final judgment on all claims in this action.*"[29] When a court is exploring purely subject matter jurisdiction (whether there is bankruptcy jurisdiction) as opposed to which court can enter a final order in the proceeding (district court or bankruptcy court), the two part *Halper* analysis is unnecessary when, as here, the type of proceeding before the court is listed in § 157(b).[30]

Because each Count of the Complaint is statutorily core, subject matter jurisdiction exists.[31]

---

[28] *Id.* ("This Court and other courts of appeals have relied on this test to ensure that § 157(b) "core" proceeding jurisdiction is exercised in a manner consistent with *Marathon*.").

[29] *Id.* at 835 (emphasis added).

[30] The *Halper* test may still be applicable for determining subject matter jurisdiction when facing a proceeding that is not enumerated in § 157(b).

[31] Defendant argues that the close nexus test is applicable and that the claims in this adversary proceeding do not meet that test. Because this matter is core, the test does not apply. In any event, there is no question that this proceeding satisfies the close nexus test. This adversary proceeding is an objection to a proof of claim and a counterclaim filed against a party that has filed a proof of claim. The resolution of this matter, therefore, "affects an integral aspect of the bankruptcy process" and has a "close nexus to the bankruptcy plan or proceeding." *Seven Fields*, 505 F.3d at 258 (citing *Resorts*, 372 F.3d at 167). *In re BWI Liquidating Corp.*, 437 B.R. 160 (Bankr. D. Del. 2010), upon which Defendants heavily rely, is easily distinguishable as it does not involve an objection to a proof of claim nor attendant counterclaims. Further, as I rule below, this matter is not only statutorily core, but I can enter a final judgment in this matter because the counterclaims must be necessarily resolved as part of the claims resolution process.

III.    **The Forum Selection Clause is not Enforceable in this Core Proceeding**[32]

Defendant next asks me to dismiss or transfer this adversary proceeding based on a

forum selection clause in the APA.[33]

Outside the bankruptcy context, forum selection clauses are presumptively valid and

are generally enforceable unless enforcement is unreasonable under the circumstances.[34]  In

bankruptcy proceedings, however, forum selection clauses are generally unenforceable in

core proceedings and enforceable in non-core proceedings.[35]  In differentiating between the

two types of proceedings, courts highlight "the strong public policy favoring centralization

of bankruptcy proceedings in a bankruptcy court."[36]  The priority of centralization,

---

[32]  In lieu of dismissal, Defendant requests that I transfer this case to New York based on the forum selection clause.  Defendant's transfer arguments share a similar premise with their dismissal arguments—"when parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."  Memorandum of Law in Support of Motion to Dismiss 38 (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Tex.*, 134 S. Ct. 568, 583 (2013)).  My analysis with respect to the forum selection clause is equally applicable to Defendant's transfer request and as such, that request is also denied.

[33]  The APA provides in Section 11.04(b):

> To the fullest extent permitted by applicable law, each party hereto (i) agrees that any claim, action or proceeding by such party seeking any relief whatsoever arising out of, or in connection with, this Agreement or the transactions contemplated hereby shall be brought in any state or federal court of competent jurisdiction sitting in New York County in the State of New York or Dallas County in the State of Texas, depending upon the location of the principal office of the initial defendant, and not in any other state or federal court in the United States of America or any court in any other country, (ii) agrees to submit to the exclusive jurisdiction of such courts described in clause (i) for purposes of all legal proceedings arising out of, or in connection with, this Agreement or the transactions contemplated hereby, (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court or any claim that any such proceeding brought in such a court has been brought in an inconvenient forum, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

Appendix to Motion to Dismiss A205.

[34]  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972).

[35]  *In re Exide Tech.*, 544 F.3d 196, 206 (3d Cir. 2008).

[36]  *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 640 (D. Del. 2011) (collecting cases).

however, "waxes and wanes with the characterization of the proceeding as either core or non-core."[37]

As established above, this adversary proceeding is a core proceeding as each count of the Complaint falls under an enumerated category in § 157(b). If this was the end of the inquiry, the forum selection clause would be unenforceable. At the hearing, however, Defendant suggested that when a party raises issues that implicate which court hears a case—such as abstention, enforceability of forum selection clauses and transfer of venue—it is necessary to look beyond the "label" of "core" into the substance of the proceeding in order to properly apply the governing standards. Defendant also suggests the label of "core" post-*Stern* does not carry as much weight as it once did because *Stern* changed the playing field.[38]

There is some case law to support this position. In *Rescap Liquidating Trust*,[39] a liquidating trust filed an adversary proceeding asserting breach of contract and indemnification claims against a creditor that filed a proof of claim. The defendant moved to withdraw the reference and to transfer the case to another district based on a forum selection clause. The district court first determined that the adversary proceeding was a core proceeding under *Stern* because it was a counterclaim against a person filing a claim against

---

[37] *Id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 201–02 (3d Cir. 1983) *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989)).

[38] Hr'g Tr. 80:22–81:16, Nov. 8, 2017, D.I. 35 ("Hr'g Tr."). Defendant also raised for the first time at argument that *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) requires me to treat *Stern* claims as non-core for purposes of the forum selection clause. Hr'g Tr. 33:13–34:8. In *Arkison*, the Supreme Court held that when *Stern* does not permit the bankruptcy court to enter a final judgment on a counterclaim, 28 U.S.C. § 151 permits a bankruptcy court to issue findings of fact and conclusions of law under 28 U.S.C. § 157(c). 134 S. Ct. at 2173. It did not address any other context. In any event, as discussed *infra*, I have concluded that I can enter a final order in this adversary proceeding. *Arkison*'s holding is thus beside the point.

[39] *ResCap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259 (S.D.N.Y. 2014) ("*ResCap Dist. Ct. Op.*").

11

the estate.[40] But, in considering the withdrawal motion, the district court looked beyond the

statutorily core nature of the proceeding when applying the Second Circuit's *Orion* test[41] for

withdrawal of the reference. This analysis was predominately for the first factor: whether

the case involved a core or non-core proceeding.[42] The district court found the core/non-

core distinction crucial in the withdrawal context because it could dictate the outcome of

inquiries into efficiency and uniformity. It then ruled that even though the adversary

proceeding was statutorily core, the first *Orion* factor weighed in favor of withdrawing the

reference:

> In *Orion,* the core/non-core inquiry was particularly important because the
> Court of Appeals reasoned that the bankruptcy court could issue a final order
> or judgment in a core proceeding but not in a non-core proceeding. Therefore,
> efficiency might be served by leaving a core proceeding in the bankruptcy court
> and reviewing any factual findings on a deferential standard. In this case, no
> such efficiency interest would be served because the bankruptcy court cannot
> enter a final order or judgment on the counterclaims. Even though the
> counterclaims are statutory core proceedings, *Stern* teaches that the bankruptcy
> court cannot issue a final order or judgment on such claims. Because the
> bankruptcy court's decision will be subject to de novo review, referring a "*Stern*
> claim" to the bankruptcy court may increase delay, waste judicial resources,
> and heighten the parties' costs.
> Therefore, the counterclaims' core status in this case is accorded little
> weight under the *Orion* test. That the bankruptcy court cannot issue a final
> judgment on ResCap's counterclaims supports withdrawing the bankruptcy
> reference.[43]

---

[40] *Id.* at 264.

[41] *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1102 (2d Cir. 1993).

[42] In the Second Circuit, the factors considered in a motion to withdraw the reference are "(1)
whether the claim is core or non-core; (2) what is the most efficient use of judicial resources, (3)
what is the delay and what are the costs to the parties, (4) what will promote uniformity of
bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors."
*ResCap Dist. Ct. Op.*, 518 B.R. at 263 (citations and quotations omitted).

[43] *Id.* at 266. The Court explained that after *Stern*, courts in the Southern District of New York have
modified the *Orion* test in one of two ways. Some courts have replaced the core/noncore analysis
with a determination of whether the bankruptcy court has the constitutional authority to enter final
judgments. Other courts have performed a core/noncore analysis and also considered the
bankruptcy court's authority to enter a final judgment. *Id.* at 265.

The district court next addressed whether it should transfer the case to a different venue because of a forum selection clause. The district court found it appropriate to consider whether the bankruptcy court could enter a final order in the proceeding in this context as well, modifying or supplementing the otherwise applicable core/non-core analysis. Finding that ResCap's counterclaims were not closely intertwined with claims allowance and did not arise from the Bankruptcy Code, the district court concluded that the public interest in centralizing proceedings in the bankruptcy court was only slight and did not outweigh the private interests in enforcing forum selection clauses.[44]

In the context of withdrawal of the reference, looking beyond the statutorily core nature of a counterclaim asserted against a party that has filed a proof of claim is appropriate given the goals at issue in considering the motion: efficiency and uniformity. When it is necessary for the district court to review any portion of the dispute *de novo*, it may be more appropriate (i.e. more efficient) for the entire matter to be withdrawn. While the outcome of the constitutional analysis is not dispositive, it can be informative to the district court making the withdrawal determination.[45]

On the other hand, it is not at all clear that the result of a constitutional analysis is always useful in evaluating forum selection clauses. When a counterclaim is filed in response to a proof of claim even if the bankruptcy court cannot enter a final order, there may still be an overriding public interest in centralizing the entire dispute in the bankruptcy

---

[44] *Id.* at 268. The district court also considered the efficiency of transferring the case because ResCap had brought many similar cases in the transferee jurisdiction.

[45] *See SNMP Research Int'l, Inc. v. Nortel Networks, Inc.* (*In re Nortel Networks, Inc.*), 539 B.R. 704, 711 (D. Del. 2015) ("If the Court were to withdraw this proceeding and [the plaintiff's claims against a third-party defendant] subsequently settled or were dismissed, the Court would then be in the awkward position of potentially adjudicating a core claim against the Debtors—a matter generally more appropriate for the Bankruptcy Court.").

court.[46] I need not decide that issue today, however, because the counterclaims in the

Complaint will necessarily be resolved in the context of the claims resolution process.

Performing the analysis thus does not alter the general rules that forum selection clauses are

enforced in non-core proceedings, but not in core proceedings.

### *The Counterclaims Will Necessarily Be Resolved in the Claims Allowance Process*

In *Stern*,[47] the Supreme Court established a two-part disjunctive test[48] to determine

whether a bankruptcy judge can enter a final order on a trustee's counterclaim:

> Congress may not bypass Article III simply because a proceeding may have
> some bearing on a bankruptcy case; the question is whether the action at issue
> stems from the bankruptcy itself or would necessarily be resolved in the
> claims allowance process."[49]

The Supreme Court held that Vickie's counterclaim for tortious interference with an

intervivos gift from her late husband would not necessarily be resolved in determining

Pierce's defamation claim against the estate.  In other words, there never existed a reason to

---

[46] A recent decision follows a similar line of reasoning.  *Lipscomb v. Clairvest Equity Partners Ltd. P'ship* (*In re LMI Legacy Holdings, Inc.*), 553 B.R. 235 (Bankr. D. Del. 2016).  Despite the presence of a valid and enforceable forum selection clause, the court in *LMI* denied a request to sever causes of action for several reasons.  First, only one of seventeen defendants invoked a forum selection clause. *Id.* at 240–41.  Second, the forum selection clause covered only one of the two claims asserted against the defendant.  *Id.*  Third, severance of the covered claim from the uncovered claim would harm the "public interest" factors of judicial economy, prejudice to other defendants, and risk of inconsistent rulings.  *Id.* at 258.  Although the court did not conduct a core/non-core analysis, the court did recognize that "public policy broadly favors 'centralizing related proceedings in the district where the bankruptcy is pending,' and this Court has a clear interest in adjudicating claims of the estate, especially when those claims are held by a trust for the benefit of unsecured creditors." *Id.* at 255 (quoting *Credit Suisse AG v. Appaloosa Inv. Ltd. P'shp. I*, No. 15-cv-3474(SAS), 2015 U.S. Dist. LEXIS 120020 at *26 (S.D.N.Y. Sept. 9, 2015)).  *LMI* shows that the general rule of enforcing valid forum selection clauses can yield to other concerns.
[47] I am not using the *Stern* test to supplement a core/non-core analysis as the district court in *ResCap* appears to have done.  As discussed *supra*, the *Halper* court developed a test to ensure that its determinations were consistent with *Marathon*.  *Stern* now tells us how to comply with *Marathon* for § 157(b)(2) counterclaims.
[48] *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 266 (Bankr. D. Del. 2017).
[49] *Id.* (citing *Stern*, 131 S. Ct. at 2618).  In *Millennium*, I questioned whether the disjunctive test was appropriate when analyzing scenarios outside traditional two-party litigation.  *Id.* at 269.  There is no question that it is appropriate in this case, which is in the same posture as *Stern*.

believe that the process of ruling on Pierce's proof of claim (for defamation) would necessarily resolve Vickie's counterclaim (for tortious interference with a gift).[50]  In those circumstances, the Supreme Court held that the bankruptcy judge overseeing Vickie's bankruptcy case lacked constitutional authority to enter a final order on Vickie's counterclaim.[51]

Here, there is every reason to believe that Plaintiff's counterclaims will necessarily be resolved in the context of ruling on Defendant's proof of claim.  Defendant is seeking money owed (the last earn out payment) under the APA.  Plaintiff's defense is that Defendant materially breached its obligations under the APA by causing Opus to terminate the PMA Side Agreement, and thus Plaintiff is excused from any obligation to make the earn out payment.  Plaintiff's affirmative claims for Defendant's breach of the APA and the Guaranty are both grounded on Defendant's actions in causing Opus to breach the PMA Side Agreement or its failure to ensure that Opus did not breach that agreement.  Thus, the basis of Plaintiff's defense to the proof of claim and its affirmative claims is the same.

Defendant seems to concede the point.  In its Memorandum of Law, Defendant states: "although the complaint asserts five counts against [Defendant], each count has the same factual predicate — that Opus unjustifiably terminated, and thereby breached, the PMA."[52]  Defendant also states that Count IV (objection) and Count V (declaratory relief) are "duplicative" and "entirely duplicative" of Count I (breach of the APA).  Even so,

---

[50] *Stern*, 131 S. Ct. at 2617.

[51] In the interest of brevity, I assume familiarity with the facts and holdings of *Stern v. Marshall*.

[52] Defendant appears to emphasize this as a basis for an argument it previews, but does not make: that Plaintiff's claims are barred by res judicata because of an award in a FINRA arbitration between Plaintiff and Opus.  In early 2014, Plaintiff commenced binding FINRA arbitration proceedings against Opus alleging prepetition breach of the PMA Side Agreement.  A panel of three arbitrators ruled on Plaintiff's claims against Opus, awarding Plaintiff compensatory damages of $1,018,300.06 plus interest.  Hr'g Tr. 9:11–16, 40:10–16; Appendix to Motion to Dismiss A129–A135.

Defendant argues that resolution of Plaintiff's counterclaim is unnecessary to resolve the

proof of claim it filed:

> For example, when addressing [Defendant's] Proof of Claim this Court simply
> could determine that Penson failed to pay the full purchase price that was due
> and owing under the APA and allow [Defendant] a claim for the entire
> $3,783,932 it seeks. In this circumstance, however, [Plaintiff's] affirmative
> claims would not be fully resolved. Among other things, the Court would need
> to determine: (a) the preclusive collateral estoppel effect of the Arbitration
> Award; (b) whether [Defendant] breached the APA and Guaranty Agreement;
> and (c) whether [Plaintiff] is entitled to the $20 million in damages as a result
> (offset by any amounts awarded to Defendant).[53]

What Defendant would "simply" have me do is allow its claim in the full amount of the

earn out payment without ruling on Plaintiff's defense that it is excused from making the

payment because of Defendant's breaches of the APA and Guaranty. *Stern* does not require

courts to ignore a debtor's defenses to a proof of claim. Rather, *Stern* examined a

counterclaim in the context of the "claims resolution process"—a process that includes a

debtor's defenses to a proof of claim. As § 502(a) provides, a filed proof of claim is deemed

allowed *unless a party in interest objects.*[54]

Defendant lists only three legal or factual matters it believes would not be resolved in

the claims resolution process. The first—whether Defendant breached the APA and

Guaranty—is easily addressed. Section 502(b)(1) of the Bankruptcy Code provides that

---

[53] Memorandum of Law in Support of Motion to Dismiss 22–23. In its Reply, Defendant expounds
on these three alleged grievances: that the counterclaim is based on a "separate and distinct" breach
of the APA, that adjudication of the counterclaim will require the court to analyze whether "two
other contracts not implicated by the proof of claim" were breached, and that the $20 million plus in
damages Plaintiff is seeking dwarfs the $3.7 million Defendant is seeking. As for the damages claim,
Defendant alleges that Plaintiff must show that it was capable of fulfilling its contractual obligation
to Opus for the duration of the PMA Side Agreement, despite a pending SEC investigation. Reply
2–3.
[54] A proof of claim is "deemed allowed" unless a party in interest objects. 11 U.S.C. § 502(a). Once
an objection is made, the claim is allowed unless it falls into one of the categories in § 502(b), (d), or
(e).

once an objection is made, the court allows the claim "except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."[55] This section permits objections grounded in applicable state law.[56] Under New York law,[57] a party's performance under a contract is excused if the other party has materially breached the contract.[58] Accordingly, to determine whether Defendant's claim should be allowed under § 502, I must first determine whether it has materially breached the APA and Guaranty.[59]

Second, the res judicata effect of the Arbitration Award is not a part of Defendant's proof of claim or Plaintiff's counterclaim. It is a possible defense to Plaintiff's counterclaim, which Defendant can choose to raise or not. Nothing in *Stern* speaks to defenses to a plaintiff's counterclaims, and Defendant cites no case for the proposition that the nature of a defendant's defenses are relevant to a *Stern* analysis.

Finally, the argument that Plaintiff's damages will not necessarily be resolved in the claims resolution process requires more of an analysis. In *Stern*, the Supreme Court listed

---

[55] § 502(b)(1); *see also* 11 U.S.C. § 558 ("The estate shall have the benefit of any defense available to the debtor against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses.").

[56] 4 Collier on Bankruptcy ¶ 502.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The effect of section 502(b)(1) is to make available to the trustee any defense to a claim that might have been available to the debtor."); *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006) ("The validity and legality of claims generally is determined by applicable nonbankruptcy law").

[57] APA Section 11.04(a), Appendix to Motion to Dismiss A205.

[58] *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (citing *Hadden v. Consol. Edison Co. of N.Y.*, 312 N.E.2d 445 (1974)).

[59] Defendant's argument that the Guaranty and the PMA Side Agreement are not germane to a resolution of its proof of claim is misplaced. These agreements are relevant to the defense of material breach. What is more, Defendant and Plaintiff provided that the APA and the Guaranty were both part of the entire agreement between the parties. APA Section 11.06, Appendix to Motion to Dismiss A206; Guaranty ¶ 14, Appendix to Motion to Dismiss A215.

damages as one of the issues that would need to be determined to resolve Vickie's tortious interference counterclaim, but not Pierce's proof of claim.[60] Here, however, the quantum of damages is directly related to the materiality, if any, of Defendant's breach.  Under New York law,

> If the party in default has substantially performed, the other party's performance is not excused . . . . There is no simple test for determining whether substantial performance has been rendered and several factors must be considered, including the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance.[61]

Plaintiff alleges, among other things, that (i) more than 35% of the purchase price was paid for the Opus relationship; (ii) it expected to receive the "overwhelming benefits of the Transaction in the time period from February 2012 through 2017, and likely beyond;" and (iii) the improper termination of the PMA Side Agreement resulted in Penson paying Defendant $35 million for the ten year relationship with Opus, but generating only $15 million from that relationship.  To determine, therefore, whether a material breach of the APA has occurred, I will need to examine whether Penson already received the substantial

---

[60] *Stern*, 131 S. Ct. at 2617 ("Assuming Texas accepted the elements adopted by other jurisdictions, that meant Vickie would need to prove, above and beyond Pierce's tortious interference, (1) the existence of an expectancy of a gift; (2) a reasonable certainty that the expectancy would have been realized but for the interference; and (3) damages.").

[61] *See, e.g., Hadden*, 312 N.E.2d at 449 (citations omitted) (citing 3A Corbin, Contracts, §§ 704—707; 6 Williston, Contracts, §§ 841—844 [3d ed.]); *see also* 15 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 44:55 (4th ed. 2014) (citations omitted) ("Substantial performance is the antithesis of material breach; if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered, and further performance by the innocent party is excused."); *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) (citing *Hadden*, 312 N.E.2d at 445) ("Whether a failure to perform constitutes a 'material breach' turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract.").

benefit of the APA, which will include establishing the damages incurred from Defendant's alleged non-performance.[62] Unlike the wholly separate issue of damages in *Stern*, the measure of damages here is integral to Plaintiff's material breach defense to Defendant's proof of claim.[63]

This conclusion is also supported by *Red Rocks*,[64] a recent non-precedential Third Circuit opinion ruling that the bankruptcy court had constitutional authority to adjudicate opposing claims in a breach of contract dispute. In *Red Rocks*, a general contractor filed a proof of claim against debtor/subcontractor seeking breach of contract and cover damages it incurred to finish construction of a project after debtor abandoned the project. The trustee of the debtor's estate filed an adversary proceeding against the general contractor alleging that the general contractor breached the contract by failing to pay debtor for the remaining balance owed under the contract. The Third Circuit affirmed the district court below in ruling that the bankruptcy court had authority to decide all state court claims because they were "inextricably interlinked" with the proof of claim. The Third Circuit held that "the question of whether the contracts had been breached had to be resolved as part of the process of determining whether [the general contractor] had a valid claim against the bankruptcy estate *or whether [the debtor] was owed money by [the general contractor]*."[65] So too

---

[62] *Cf. Process Am.*, 839 F.3d at 136–37 (examining whether failure of one party to pay residuals due under agreement excuses the other party's obligations not to solicit clients after termination of agreement).

[63] I make no ruling about whether damages must always be integral to a defense to satisfy the *Stern* disjunctive test.

[64] *In re Red Rock Servs., Co.*, 642 Fed. Appx. 110 (3d Cir. 2016).

[65] *Id.* at 114–15 (emphasis added); *see also In re Red Rocks Servs. Co.*, 522 B.R. 551, 563 n.8 (E.D. Pa. 2014) ("[Debtor's] counterclaims here are by nature intimately related to the core proceeding—they specifically deal with the validity of the claim against the debtor. In fact, as [Debtor] notes, its counterclaims are more properly based on § 157(b)(2)(B), concerning 'allowance or disallowance of claims against the estate or exemptions from property of the estate,' than on § 157(b)(2)(C), which

here. Whether the APA was breached has to be resolved as part of determining the validity

of Defendant's claim against the estate.[66]

At bottom, Defendant is trying to dodge a defense to its proof of claim.[67] The

defense raised by Plaintiff requires me to determine whether Defendant breached the APA

---

was the provision at issue in *Stern*. This provides further support that the Bankruptcy Court here
properly entered final judgment on these claims.").

[66] Defendant's attempts to distinguish *Red Rocks* are not persuasive. First, Defendant asserts that in
*Red Rocks*, the breach that formed the defense to the proof of claim was the "same breach" as the
basis of the proof of claim. Defendant asserts that there can only be one winner. In essence, "If A is
right, B is wrong. If B is right, A is wrong." That is not correct. The general contractor in *Red Rocks*
sought damages for costs incurred in completing construction because of subcontractor's breach in
failing to complete the job. The subcontractor sought damages for the work it performed and for
general contractor's breach in failing to pay for it. As the bankruptcy court observed, it was possible
for the subcontractor to recover damages if it had substantially completed the contract—material
breach was an issue in the case—and possibly even if it had not substantially completed the contract,
because the general contractor did not terminate the contract. *In re Red Rock Servs. Co.*, 480 B.R. 576,
589 n.13 (Bankr. E.D. Pa. 2012). Defendant also relies on *Loomis v. Hunter, Humphrey & Yavitz, PLC*,
Nos. CV-12-0586-PHX-FJM, BK-10-1885-RJH, 2012 WL 3064496 (D. Ariz. July 27, 2012) and
*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.* (*In re Lehman Bros. Holdings Inc.*), 480 B.R.
179 (S.D.N.Y. 2012). These cases are not helpful as the analysis in each is conclusory. In *Loomis*,
the court merely states, with no analysis, that a debtor's legal malpractice claims will not be resolved
in determining a law firm's proof of claim for legal fees. *Loomis*, 2012 WL 3064496, at *2; *but see
Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1252 (3d Cir. 1994) (analyzing a law firm's
right to jury trial and holding "The close connection between the malpractice action and the
objections to fees leads us to conclude that the debtors' allegations of malpractice are part of the
process of allowance and disallowance of claims."). In *Lehman*, the court groups together and
summarily addresses some of the forty-nine counts contained in a lengthy and complex complaint to
determine whether they would be necessarily resolved in the claims resolution process. The analysis
does not contain a discussion of any of the specific defenses raised to the proof of claim much less
analyze adjudicatory authority on a claim by claim basis relative to any defense. Indeed, after
deciding that the court lacked constitutional authority to adjudicate at least the majority of the
plaintiff's claims, the court concludes its analysis recognizing that it would be a waste of judicial
resources to split the case between two different fora. *Lehman*, 480 B.R. at 190–93.

[67] At argument, the following illustrative colloquy took place:

> THE COURT:          Well, let me ask you this. So, let's just say that there was no
> affirmative claim for relief. There wasn't counts one through three of this complaint, but
> there was count four which says debtor doesn't have to pay Schonfeld because Schonfeld
> materially breached the contract; therefore debtor doesn't have to perform.
> MR. USATINE:    Correct.
> THE COURT:          Wouldn't I have to decide that issue?
> MR. USATINE:    No.
> THE COURT:          And why not?
> MR. USATINE:    Because it's a different breach.

Hr'g Tr. 76:17–77:2.

and the Guaranty, and the degree of Plaintiff's alleged loss.  *Stern* did not affect objections to

claims or § 502.  As the Supreme Court recognized, "He who invokes the aid of the

bankruptcy court by offering a proof of claim and demanding its allowance must abide the

consequences of that procedure."[68]  In *Katchen v. Landy*, that consequence included resolving

a preference action as part and parcel of the claims allowance process; here, it includes

resolution of objections to claims.[69]  Because Plaintiff's counterclaims are statutorily core

and I may enter a final judgment on them consistent with the mandates of the Constitution,

I will not enforce the forum selection clause.[70]

### IV.    Permissive Abstention is Not Appropriate in this Case

Alternatively, Defendant requests that I exercise my discretion and abstain from

hearing this case.  Discretionary abstention is available to federal courts hearing bankruptcy

cases, and may be exercised in the interest of justice, or in the interest of comity with state

courts or respect for state law.[71]  Discretionary abstention may be appropriate when

---

[68] *Stern*, 131 S. Ct. at 2616 (citing *Katchen v. Landy*, 382 U.S. 323, 333 (1966)).

[69] *Id.* at 2617 (emphasis added) (citation omitted) ("In ruling on Vickie's counterclaim, the Bankruptcy Court was required to and did make several factual and legal determinations that were not 'disposed of *in passing on objections'* to Pierce's proof of claim for defamation . . . .").  Both preference actions and state law defenses are proper bases on which a proof of claim can be disallowed. § 502(b), (d).

[70] In *Stern*, the Supreme Court had the benefit of hindsight in determining what was and was not necessarily resolved in the claims resolution process.  It is harder to make the determination at the outset of the litigation.  *See Onkyo Europe Electronics GMBH v. Global Technovations Inc. (In re Global Technovations Inc.)*, 694 F.3d 705, 722 (6th Cir. 2012) ("[T]he bankruptcy court could not have known at the outset whether Onkyo's proof of claim would be disallowed in its entirety—such a determination depended on the amount the court determined OAI was worth.  We do not believe that *Stern* requires a court to determine, in advance, which facts will ultimately prove strictly necessary to resolve a creditor's proof of claim.").  If during this litigation I conclude that I do not have to determine damages as part of the claims resolution process, I will enter proposed findings of fact and conclusions of law on that aspect of the adversary proceeding.  This potential scenario does not, however, change my conclusion on the forum selection clause.  *See* n.46, *supra.*

[71] 28 U.S.C. § 1334(c)(1) ("Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.").

jurisdiction in the federal court is proper and mandatory abstention does not apply.

Abstention, however, is "the exception, not the rule."[72] It "rarely should be invoked."[73]

Many factors guide courts in evaluating a request for discretionary abstention. In this district, courts often look to these factors:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.[74]

These factors are not mathematically applied.[75] I will address each factor in turn.

    *(1)    Effect or lack thereof on the efficient administration of the estate.* It is true, as Defendant argues, that SAI's plan of reorganization was confirmed and became effective nearly three and a half years ago. But this is not a "peripheral contract dispute."[76] This adversary proceeding is also an objection to Defendant's proof of claim and, as discussed above, the defense to the proof of claim has the same basis as Plaintiff's affirmative claims. This factor does not favor abstention.[77]

---

[72] *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1999 (3d Cir. 1992) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

[73] *Id.* (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

[74] *Burtch v. Seaport Capital, LLC* (*In re Direct Response Media, Inc.*), 466 B.R. 626, 659 (Bankr. D. Del. 2012) (citing *In re LaRoche Indus., Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004)).

[75] *In re Samson Res. Corp.*, 559 B.R. 360, 373 (Bankr. D. Del. 2016).

[76] Memorandum of Law in Support of Motion to Dismiss 29.

[77] *Cf. HQ Glob. Workplaces, Inc. v. Bank of Nova Scotia* (*In re HQ Glob. Holdings, Inc.*), 293 B.R. 839, 845 (Bankr. D. Del. 2003) (recognizing that the crux of the objection to a proof of claim is the same as

(2)    *The extent to which state law issues predominate over bankruptcy issues.* The parties

agree, as they must, that state law issues predominate. That said, the state law issues arise

in the context of an objection to a proof of claim and affirmative claims whose resolution

will necessarily be resolved in that context. So, while this factor favors abstention, it is not

dispositive.[78]

(3)    *Difficulty or unsettled nature of applicable state law.* Defendant admits that this

case does not present novel legal issues. I agree. This factor does not favor abstention.[79]

(4)    *Presence of a related proceeding commenced in state court or other non-bankruptcy*

*court.* Defendant asserts that this factor weighs in favor or abstention because Plaintiff's

claims against Opus have been adjudicated in a FINRA arbitration proceeding, and

Defendant's res judicata argument will require consideration of state law issues best resolved

in state court. I am not persuaded by this argument. The FINRA arbitration has

concluded, and res judicata is merely one more state-law issue that will need to be addressed

to resolve Defendant's proof of claim. This factor does not favor abstention.[80]

---

other claims between various parties—the matter ultimately involves the allowance of claims, which
will affect the administration of the estate).
[78] *Cf. In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 584 (Bankr. D. Del. 2017) ("[S]ince
determination of whether the disputed funds are property of the state is intimately tied to the Court's
traditional functions, abstention is inappropriate.").
[79] Memorandum of Law in Support of Motion to Dismiss 30.
[80] When the motion was filed, and through the date of the hearing, there was no pending state court
lawsuit. While this matter was under consideration, however, the parties notified me that Plaintiff
sued Defendant in New York state court "[a]s a precautionary measure, given Schonfeld's position
that the statute of limitations continues to run because this Court lacks jurisdiction," and because the
parties could not come to terms on a tolling agreement. Letter to the Honorable Laurie Selber
Silverstein Filed by Schonfeld Group Holdings, LLC, Jan. 19, 2018, D.I. 40; Letter to the Honorable
Laurie Selber Silverstein Filed by Penson Technologies, LLC, Jan. 23, 2018, D.I. 41. Neither party
suggested that the filing of this new lawsuit changed the permissive abstention analysis.

(5)     *Jurisdictional basis, if any, other than § 1334.*  This case presents no jurisdictional basis other than § 1334, as conceded by Plaintiff.[81]  This factor favors abstention.

(6)     *Degree of relatedness or remoteness of the proceeding to the main bankruptcy case.*  Defendant argues that the relationship between this adversary proceeding and the main case is extremely remote.  Not so.  Rulings on claims against the estate are "intimately related to the bankruptcy proceedings."[82]  This factor does not favor abstention.

(7)     *The substance rather than the form of an asserted "core" proceeding.*  That this is a state law contract dispute favors abstention,[83] but it is also an objection to a claim, which does not favor abstention.[84]  This factor, therefore, is neutral.

(8)     *Feasibility of severing state law claims from core bankruptcy matters to allow the entry of judgments in state court with enforcement left to the bankruptcy court.*  It is not feasible to sever Penson's state-law counterclaim from Schonfeld's proof of claim, the allowance or disallowance of which is a core matter.[85]  This factor does not favor abstention.

(9)     *Burden of the court's docket.*  While this court has a significant caseload, I have nothing before me showing that the state court docket is any less significant.  This factor does not favor abstention.

(10)    *Likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.*  Plaintiff had a choice of fora in which to bring its affirmative claims against Defendant.  But Defendant voluntarily filed its proof of claim in SAI's bankruptcy case, thereby subjecting itself to the jurisdiction of this court for the

---

[81] Penson's Response 16.
[82] *HQ Glob.*, 293 B.R. at 846.
[83] *See, e.g., Trans World Airlines, Inc. v. Karabu Corp. (In re Trans World Airlines, Inc.)*, 196 B.R. 711, 715 (Bankr. D. Del. 1996).
[84] *HQ Glob.*, 293 B.R. at 846.
[85] 28 U.S.C. § 157(b)(2)(B), (C).

determination of its claim.  It was appropriate, therefore, for Plaintiff to object to Defendant's proof of claim and bring its affirmative claims in one proceeding, and in this court.[86]  What is more, the FINRA arbitration did not involve Defendant, so it does not suggest inappropriate forum shopping.  This factor does not favor abstention.

(11)     *Right to a jury trial.*  Both parties recognize that there is no right to a jury trial based on the contracts at issue.[87]  This factor does not favor abstention.

(12)     *Presence of non-debtor parties.*  The only non-debtor party is Defendant.  This factor does not favor abstention.

Fundamentally, this adversary proceeding involves an objection to a proof of claim. That it involves resolution of state law issues is thus unremarkable.  The state law issues are not complex, and judicial economy suggests that the objection to the proof of claim and Plaintiff's counterclaims—which are inextricably interlinked with Defendant's proof of claim—be resolved by one court.  That court should be the bankruptcy court as the claim allowance process is a quintessential bankruptcy court function.  None of the factors that favor abstention convince me that, in this particular case, the interests of justice merits a different outcome.  As a result, I decline to abstain.

---

[86]  *HQ Glob.*, 293 B.R. at 847.
[87]  Memorandum of Law in Support of Motion to Dismiss 32; Penson's Response 17.

## V.    CONCLUSION

The essence of Defendant's motion is that this litigation is at best a non-core proceeding and so it should not go forward in this court.  Because I disagree for the reasons set forth above, an order denying the requested relief will issue.

Dated: May 21, 2018

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE